## Fork Ridge Bus Line v. Matthews.

(Decided March 24, 1933.)

R. W. KEENON, W. S. SANDIFER, Jr., and LOGAN E. PATTERSON for appellant.

ARTHUR RHORER and MORRIS & JONES for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

The appeal is from a judgment for $2,614 for personal injuries.

The facts are these: The Fork Ridge Bus Line, a partnership composed of Dewey Dillman and Harry Kivett, operated a bus line between Middlesboro and Fork Ridge, Tenn. About 7 o'clock on the evening of October 19, 1931, appellee, J. R. Matthews, age 72, while walking on Exeter avenue in the city of Middlesboro, was struck and severely injured by a bus belonging to the partnership, and driven by Dewey Dillman. According to Matthews, he alighted from a truck on the right hand side of Exeter avenue shortly before the accident. Looking in both directions, and seeing no vehicle approaching, he crossed over to the left side of the street, and started west. There was no sidewalk there, and he walked on the asphalt part of the time and part of the time on the shoulder of the road. Between three and five minutes later, and after he crossed over and had gone about half a block, he heard something behind him and started to turn around. When he got about half-way around, something flashed in his face, and it seemed like an explosion. The next thing he knew he was in the hospital. Immediately after the accident, he was found by a witness just off the asphalt in the edge of the grass and weeds, and Dewey Dillman, the driver of the bus, was standing near him holding his head. There was blood on his clothes and face, and two blood spots on the edge of the concrete. The bus was on the same side of the road about 10 feet beyond Matthews. On the other hand, Dewey Dillman, the driver of the bus, testified in substance as follows: He was en route to his home, which was on the right-hand side of the street, and was going along at a moderate speed. Matthews was walking near the right-hand side of the road. As he got close to Matthews, Matthews turned in an angle of about 45 degrees in front of the bus. He turned the wheels as Matthews twisted or turned across the road. That threw Matthews and him in the same direction in kind of an angle across the road. After that, he heard a collision. Matthews evidently lunged in or near the back end, or center of the right-hand side of the bus. He did not see Matthews at the time he was struck, as he had passed him. He did not sound the horn, but just cut the wheels in an

effort to avoid the accident. He stopped the bus 10 or 15 feet from where Matthews was lying. When he ran back to Matthews, Matthews was lying "near about four feet of the left-hand side of the road going west."

It is insisted that appellant's motion for a peremptory instruction should have been sustained on the ground that Matthews was guilty of contributory negligence as a matter of law. The argument is that Matthews, who claims to have looked in both directions, must have seen the bus as it was approaching, and that, even after he heard something behind him, he made no effort to get out of the way of the bus. It must not be overlooked that, according to Matthews' testimony after looking up and down the road, he crossed over, and the accident did not occur until several minutes later, and after he had walked about half a block. If that be true, it is hardly probable that the bus was in sight when he looked or crossed over. Not only so, but, as he was walking on the left-hand side of the road going west, he had a right to assume that a bus coming from the rear would not be on the wrong side of the road, and would give him warning of its approach. Moreover, his statement that he heard something behind him, started to turn around, and got about halfway around when something dark flashed in his face, and it seemed like an explosion, is hardly susceptible of the construction that, after hearing something behind him, he, by the exercise of ordinary care, could have gotten out of the way of the bus. On the contrary, it is but a fair inference from his evidence that the accident followed the noise behind him so quickly that there was no opportunity for him to get out of the way. In view of the situation thus disclosed, it cannot be said that Matthews was guilty of contributory negligence as a matter of law.

The contention that appellants were entitled to a "sudden appearance" instruction presents a more serious question. It long has been the rule in this state that, where the injured person leaves a place of safety and steps, walks, or runs in front of an approaching vehicle so suddenly and so close to it that the driver, by the exercise of ordinary care with the means at hand, could not have avoided the accident if the vehicle had been running at a reasonable rate of speed, there is no liability. Lexington R. Co. v. Van-

laden's Adm'r. 107 S. W. 740, 32 Ky. Law Rep. 1047; Louisville R. Co. v. Gaar (Ky.) 112 S. W. 1130; Finnegan v. Floyd Garage & Auto Livery Co., 214 Ky. 416, 283 S. W. 402. It is clear that the facts testified to by the driver of the bus bring the case within the above rule, and that the court should have given an instruction similar in effect to the first part of Instruction D offered by appellants. Coleman v. Nelson, 224 Ky. 460, 6 S. W. (2d) 454.

In view of another trial, we deem it proper to call attention to the fact that the statute does not require the operator of the machine to sound his horn or other device whenever the machine is moved, but only "whenever necessary as a warning of the approach of such vehicle to pedestrians, or other vehicles," section 2739g-28, and that ordinarily the question of necessity is for the jury. White Swan Laundry v. Boyd, 212 Ky. 747, 279 S. W. 345; Wener v. Pope, 209 Ky. 553, 273 S. W. 92. Therefore the court on another trial will insert after the words "to give notice of its presence by the customary signal" in instruction No. 1 the words "if necessary to warn plaintiff of its approach."

The instruction on contributory negligence reads in part as follows:

"It was the duty of J. R. Matthews, the plaintiff, to exercise ordinary care for his safety and in this case that means the degree of care which is usually exercised under similar circumstances by persons of his own age, intelligence and discretion, to protect themselves from injury."

It is true that ordinary care on the part of a child, who is old enough to be chargeable with contributory negligence, is such care as ordinarily prudent children of his age, experience, and discretion are accustomed to observe under such circumstances, Kentucky Hotel Co. v. Camp, 97 Ky. 424, 30 S. W. 1010, 17 Ky. Law Rep. 297, but we have never held that age, experience, and discretion are elements to be taken in consideration in determining ordinary care on the part of an adult. On the contrary, we think it better to adhere to the rule that every adult, regardless of his age, experience, or discretion, should exercise such care as is usually exercised by ordinarily prudent persons in the same or similar circumstances.

On another trial the court will change the instruction on contributory negligence so as to make it conform to this view.

This conclusion makes it unnecessary to determine whether the record was properly amended by the entry of the nunc pro tunc order to the effect that the affirmative allegations of the answer were controverted of record. On the return of the case, appellee will be permitted to file a reply denying the plea of contributory negligence.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.